UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| HAROLD WOLFORD, | ) | CASE NO. 4:08 CV 1749 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| CORRECTIONS CORPORATION | ) | AND ORDER |
| OF AMERICA, *et al.*, | ) | |
| | ) | |
| Defendant. | ) | |

*Pro se* plaintiff Harold Wolford filed this action under 42 U.S.C. § 1983 against Corrections Corporation of America ("CCA"), Northeast Ohio Correctional Center ("NEOCC"), NEOCC Warden Gunja, Unit Manager Thomas, Counselor Moderilli, Counselor McHugh, Medical Supervisor Orenic, Officer Myers, Officer Dorbush, and Nurse Jane Doe. In the complaint, plaintiff alleges he contracted a staph infection during an institution wide lock down. He seeks monetary damages.

**Background**

Mr. Wolford is incarcerated in NEOCC, a private prison owned and operated by CCA. He claims he was transferred from the Allegheny Detention Center in Pittsburgh to NEOCC in March 2008, due to lack of bed space and overcrowded conditions in the Allegheny facility. He

states that NEOCC offered little improvement to his living conditions. He states that cells designed to hold two inmates regularly hold three inmates. He indicates one inmate is required to sleep on the floor in close proximity to the toilet. He further alleges that CCA does not quarantine inmates with "various diseases." (Compl. at 5.) Instead, he claims that staff members wear gloves at all times during inmate interactions to prevent the spread of disease.

Mr. Wolford contends that in May 2008, the warden placed the facility on lock down status in order to search for contraband. For five days, inmates were not permitted out of their cells, even for a shower. He claims he developed a painful boil on his right hip which he attributes to the overcrowded living conditions in the prison. He indicates that he brought his boil to the attention of Officers Dorbish and Myers, but was informed that he would have to wait until the lock down was lifted and then report to sick call. He alleges that because he was unable to shower or visit the medical department, the infection grew worse. When the lock down order was lifted, he was diagnosed with a staph infection. He was placed on two antibiotics. Mr. Wolford claims that although he was told to come to the medical department as needed to have the bandage changed, on several occasions Nurse Jane Doe refused to change the bandage and he had to do it himself.

Mr. Wolford claims that he experienced side effects from the medication. He indicates that he began to experience pain in the area of his prostate. He states that "he complained several times [but] medical refused to see him." (Compl. at 6.) He filed grievances regarding several staff members including Warden Gunja, Medical Supervisor Orenic, Unit Manager Thomas, and Counselors Moderilli and McHugh. He states that most of his grievances were ignored. One of the grievances instructed him to report to open sick call. He indicates that the Warden told him he would be seen by someone in the medical department that day, but the visit did not occur. Mr.

Wolford contends that the defendants violated his rights under the Eighth Amendment.

## Analysis

A district court is expressly authorized to dismiss any civil action filed by a prisoner seeking relief from a governmental entity, as soon as possible after docketing, if the court concludes that the complaint fails to state a claim upon which relief may be granted, or if the plaintiff seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A; *Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000); *see Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974) (citing numerous Supreme Court cases for the proposition that attenuated or unsubstantial claims divest the district court of jurisdiction); *In re Bendectin Litig.*, 857 F.2d 290, 300 (6th Cir.1988) (recognizing that federal question jurisdiction is divested by unsubstantial claims). For the reasons stated below, this action is dismissed pursuant to 28 U.S.C. § 1915A.

Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Mr. Wolford is a pretrial detainee at NEOCC. The Constitution's protections against cruel and unusual punishment extend to pretrial detainees through the Fourteenth Amendment's Due Process Clause, *see Whitley v. Albers*, 475 U.S. 312, 327 (1986), but are analyzed under the Eighth Amendment. *See Thompson v. County of Medina,* 29 F.3d 238, 242 (6th Cir.1994).

To establish a violation of the Eighth Amendment, the offending conduct must reflect an unnecessary and wanton infliction of pain. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977). A viable Eighth Amendment claim has objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. *Id.* Seriousness is

measured in response to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). Routine discomforts of prison life do not suffice. *Id.* Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9. Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id.* A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer*, 511 U.S. at 834.

Mr. Wolford asserts three Eighth Amendment claims. He first claims that NEOCC houses three inmates in a cell that was designed to hold two inmates. He claims one of the inmates is forced to sleep on the floor. Mr. Wolford does not clarify whether he is the inmate relegated to the floor. Nevertheless, while overcrowded conditions can be restrictive and even harsh, they do not violate the Eighth Amendment unless they deprive the inmate of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347. Although Mr. Wolford may have been subjected to uncomfortable conditions, he does not allege with any specificity that he was denied essential food, basic sanitation, or safe temperatures.

Similarly, Mr. Wolford contends that he was unable to shower for five days during the lock down. This was a temporary restriction placed on the inmates. Mr. Wolford does not indicate the number of showers that would normally have been provided to the inmates during this five day period of time. The Eighth Amendment prohibits behavior which constitutes "unnecessary and wanton infliction of pain." *See Knop v. Johnson,* 977 F.2d 996, 1012-19 (6th Cir.1992). It does not protect inmates against those conditions which cause mere discomfort or inconvenience. *Hudson*, 503 U.S. at 9-10 (requiring extreme or grave deprivation). Inmates "cannot expect the

amenities, conveniences and services of a good hotel." *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir.1988); *see Thaddeus-X v. Blatter*, 175 F.3d 378, 405 (6th Cir. 1999).  The denial of a shower during the five days of the lock down is not the sort of extreme deprivation which triggers Eighth Amendment protections.

Finally, Mr. Wolford claims that he did not receive medical treatment for his boil for five days due to the lock down.  Prison officials cannot be deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  A 'serious medical need' has been defined as one that has been diagnosed by a physician as mandating treatment. *Gaudreault v. Municipality of Salem* 923 F.2d 203, 208 (1st Cir. 1990)(citing *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326 (3d Cir. 1987)).  Mr. Wolford alleges that his boil contained a staph infection, which if true, could present a sufficiently serious medical need.

The inquiry, however, does not end at this point.  To state a claim for a violation of the Eighth Amendment, Mr. Wolford must also allege facts to suggest that the defendants were deliberately indifferent to his serious medical need. *Farmer*, 511 U.S. at 835.  An official acts with deliberate indifference when "he acts with criminal recklessness," a state of mind that requires that the official act with conscious disregard of a substantial risk of serious harm. *Id.* at 837.  Mere negligence will not suffice. *Id.* at 835-36.  Consequently, allegations of medical malpractice, negligent diagnosis, or negligent treatment fail to state an Eighth Amendment claim.  Moreover, where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5.

(6th Cir. 1976).

It is apparent on the face of the complaint that Unit Manager Thomas, Counselor Moderilli, Counselor McHugh, Medical Supervisor Orenic and Warden Gunja are named as defendants in this action because they did not respond in a satisfactory manner to Mr. Wolford's grievances. Responding to a grievance or otherwise participating in the grievance procedure, however, is insufficient to trigger liability under 42 U.S.C. § 1983. *Shehee v. Luttrell*, 199 F.3d. 295, 300 (6th Cir. 1999)("as against defendants whose only involvement was the denial of administrative remedies, [t]here is no allegation that any of these defendants directly participated ... in the claimed ... acts...."); *see Martin v. Harvey*, No. 00-1439, 2001 WL 669983, at *2 (June 7, 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care.") Mr. Wolford failed to allege facts to reasonably indicate these defendants engaged in activities outside of the grievance process which could be characterized as deliberately indifferent to his serious medical needs.

CCA is named as a defendant because it is the owner and operator of NEOCC. There are no other claims stated against the corporation. "Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir.1999) (citing *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (1989)). Rather, the supervisors must have actively engaged in unconstitutional behavior. *Id.* Liability, therefore, must lie upon more than a mere right to control employees and cannot rely on simple negligence. *Id.* In order for Mr. Wolford to state a claim against CCA, he must allege that the corporation did more than play a passive role in the alleged violations or show mere tacit approval of the behavior. *Id.* He must show that the corporation somehow encouraged or condoned

-6-

the actions of its employees. *Id.*; *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir.1995). There is no suggestion that CCA knew of the activities at NEOCC during those five days, and that it condoned the denial of all non-emergency medical visits for that period of time.

Furthermore, Mr. Wolford alleges that Officers Myers and Dorbish would not allow him to leave his cell to go to the medical department during the lock down. He may also be asserting a claim against the warden for instituting the lock down. To hold these defendants personally liable for the delay in medical care, Mr. Wolford must demonstrate that these officials acted with conscious disregard of a substantial risk of serious harm to him. *Id.* at 837. It is not sufficient to allege that they were negligent in evaluating the seriousness of the medical situation. *Id.* at 835-36. There are no allegations in the complaint which indicate that these individuals recognized that the boil was a sufficiently serious threat to Mr. Wolford's health, or that they responded with indifference to that condition which can be characterized as criminal recklessness.

Finally, Mr. Wolford fails to state a claim against Nurse Doe. He states that she refused to change his bandages on several occasions. He was forced to change the bandages by himself. He claims only that he was denied assistance with this task. He does not allege that he was denied the materials with which to change the dressing or that he was denied the opportunity to obtain clean bandages. He does not even allege facts to suggest that he required assistance to perform this task. While it may have been inconvenient for him to change his own bandages, Mr. Wolford was not denied medical care. Conditions which only cause discomfort or inconvenience do fall within the parameters of the Eighth Amendment. *Hudson*, 503 U.S. at 9-10.

## Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. 1915A. The court

certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[1]

    IT IS SO ORDERED.

                /s/ Patricia A. Gaughan
                PATRICIA A. GAUGHAN
                UNITED STATES DISTRICT JUDGE

Dated: 11/5/08

---

[1] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.